UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

THOMAS A. LEEPER,                    )
                                     )
                    Plaintiff,       )
                                     )
        v.                           )        No.  4:13CV367 ACL
                                     )
CAROLYN W. COLVIN, Acting            )
Commissioner of Social Security,     )
                                     )
                    Defendant.       )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the Commissioner's final decision denying Thomas A. Leeper's

application for disability insurance benefits under Title II of the Social Security

Act, 42 U.S.C. §§ 401, *et seq.*, and application for supplemental security income

under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*  All matters are pending

before the undersigned United States Magistrate Judge, with consent of the parties,

pursuant to 28 U.S.C. § 636(c).  Because the Commissioner's final decision is not

supported by substantial evidence on the record as a whole, it is reversed.

### I.  Procedural History

On May 22, 2007, plaintiff Thomas A. Leeper applied for disability

insurance benefits (DIB) and supplemental security income (SSI), claiming he

became disabled on January 1, 2005, because of depression, a shoulder injury, and

back problems. (Tr. 52-55, 73, 395-98.) Upon initial consideration, the Social

Security Administration denied plaintiff's claims for benefits. (Tr. 23, 42-46, 380.)

A hearing was held before an Administrative Law Judge (ALJ) on November 6,

2007, at which plaintiff testified. (Tr. 255-79.) On November 29, 2007, the ALJ

issued a decision denying plaintiff's claims for benefits. (Tr. 364-78.) After the

Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 3-

6), plaintiff filed a civil action in this Court seeking judicial review. *See Leeper v.*

*Astrue,* Cause No. 4:10CV935 LMB (E.D. Mo. 2010). On December 2, 2010,

United States Magistrate Judge Lewis M. Blanton remanded the matter to the

Commissioner on the Commissioner's motion, which represented that the Appeals

Council would direct the ALJ upon remand to obtain testimony from a vocational

expert to determine the effect of plaintiff's severe mental impairment on his ability

to perform work in the national economy. (*See* Tr. 329-30.)

Upon receipt of Judge Blanton's Order, the Appeals Council issued a

separate Order remanding the matter to the ALJ for further proceedings. (Tr. 327.)

Pursuant to this directive, the ALJ conducted a supplemental hearing on July 25,

2011, at which plaintiff and a vocational expert testified. (Tr. 406-39.) On

October 4, 2011, the ALJ issued a decision denying plaintiff's claims for benefits,

finding vocational expert testimony to support a conclusion that plaintiff could

perform work as it exists in significant numbers in the national economy. (Tr. 287-

300.)  In a letter to plaintiff's counsel dated February 11, 2013, the Appeals Council stated that no reason existed for it to assume jurisdiction over the ALJ's adverse decision, and it informed counsel that the ALJ's decision was the final decision of the Commissioner.  (Tr. 280-84.)  This civil action seeks judicial review of that final decision.  42 U.S.C. § 405(g).

In this action, plaintiff claims that the ALJ failed to fully develop the record by limiting counsel's examination of plaintiff during the supplemental administrative hearing.  Plaintiff also claims that the hypothetical question posed by the ALJ to the vocational expert did not include all of his limitations, including limitations as found by the ALJ in her written decision, and thus that the ALJ erred in relying on the expert's response to find plaintiff not disabled.  Plaintiff requests that the final decision be reversed and that he be awarded benefits.  For the following reasons, the matter is remanded for further proceedings.

## II.  Testimonial Evidence Before the ALJ

A.    <u>Hearing Held November 6, 2007</u>

At the hearing on November 6, 2007, plaintiff testified in response to questions posed by the ALJ and counsel.

At the time of the hearing, plaintiff was fifty years of age.  (Tr. 272.)  Plaintiff lives in a house with his brother and his brother's three children, ages seven, eleven, and fifteen.  Plaintiff attended college for two years.  Plaintiff

testified that he collected unemployment benefits for six months beginning in 2004 through approximately June 2005.  Plaintiff testified that his brother handles all of the bills.  (Tr. 258-59, 275.)

Plaintiff's Work History Report shows that plaintiff worked as a mover and as a painter in 1996.  Plaintiff worked at UPS as a delivery driver/helper during the Christmas seasons in 1996, 1997, and 1998.  From April to November 1998, plaintiff worked as a golf cart attendant at Florissant Golf Course.  From April 1999 to September 2001, plaintiff worked as a warehouse worker/forklift operator at Centric Group.  From November 2002 to December 2004, plaintiff worked as a warehouse worker at Mr. B's Pool Center.  (Tr. 57, 74-75.)  Plaintiff testified that he was laid off from his last job one week before Christmas, because of a decrease in business.  (Tr. 268-69.)

Plaintiff testified that he suffered a broken shoulder and experienced problems with his hip and back as a result of an accident involving a boat trailer. Plaintiff testified that while the broken bones have healed, he continues to experience problems with arthritis that developed because of his injuries.  (Tr. 262-63.)  Plaintiff testified that his physical condition prevents him from lifting anything over thirty pounds five days in a row.  (Tr. 271.)  Plaintiff testified that he has received no treatment for his arthritis condition within the previous four or five years because of a lack of insurance.  (Tr. 263.)

Plaintiff testified that his mother died from cancer in January 2005, which was shortly after he was laid off from his last job. Plaintiff testified that he had a brother who also died from cancer in 2000, at which time plaintiff had an anxiety attack. (Tr. 268-69.) Plaintiff testified that he was prescribed BuSpar during such time for depression. (Tr. 264-66.)

Plaintiff testified that he currently suffers from depression and experiences crying spells and sleep difficulties. Plaintiff testified that he averages a couple of hours of sleep every night. Plaintiff testified that he also has suicidal thoughts once a week. (Tr. 270, 276, 278.) Plaintiff testified that he has received no treatment for any mental condition since his anxiety attack in 2000, but believes he needs such treatment. (Tr. 264-66, 277-78.)

As to his exertional abilities, plaintiff testified that he can stand for fifteen to twenty minutes, walk a couple of blocks, and sit for one hour. (Tr. 275.)

As to his daily activities, plaintiff testified that he gets his brother's children ready for school, does some dishes and laundry, and then does nothing else during the day. Plaintiff testified that his brother and his brother's children do the cleaning and the cooking. (Tr. 270.) Plaintiff is able to bathe and groom himself. (Tr. 273.) Plaintiff does not go shopping, attend church, or do yard work. Plaintiff testified that he socializes with friends and family and goes to the park to watch his nieces and nephews play soccer. (Tr. 273-74.) Plaintiff testified that he drinks

alcohol on the weekends.  (Tr. 265.)

B.    Hearing Held July 25, 2011

1.    *Plaintiff's Testimony*

At the hearing on July 25, 2011, plaintiff testified in response to questions posed by the ALJ and counsel.

Plaintiff testified that he currently lives in a house with his brother and nephew.  (Tr. 410.)  Plaintiff testified that he applied for work three months prior to maintain eligibility for food stamps.  (Tr. 414.)

Plaintiff testified that he cared for his brother in 1999 when his brother had cancer.  Plaintiff testified that he cared for his mother in 2004.  Plaintiff testified that he currently helps his other brother, with whom he lives, who had been in a coma until March 2010.  Plaintiff testified that care for his brother includes cooking, doing his laundry, cleaning his room, shopping, and caring for his children when they visit.  (Tr. 411-12.)  Plaintiff testified that his activities also include watching television and visiting a friend who lives across the street.  (Tr. 425, 429.)

Plaintiff testified that he began taking medication for depression in February 2011 and was not currently seeing a psychiatrist or psychologist for the condition.  (Tr. 419.)  Plaintiff testified that he constantly worries and sometimes has sleeping difficulties, because of his depression.  (Tr. 426-27.)  Plaintiff testified that he

experiences crying spells a few times a month and that such episodes last about ten minutes. Plaintiff testified that his medication has helped his crying spells and somewhat helps to "take the edge off for a while," but that he sometimes experiences dizziness as a side effect of his medication. (Tr. 424, 427-28.) Plaintiff testified that he does not drive, because of dizziness, drowsiness, and lightheadedness caused by his medication. (Tr. 425.)

Plaintiff testified that he cannot lift a gallon of milk with his left hand, because of his physical impairments. Plaintiff is right-handed. (Tr. 422-23.) Plaintiff testified that he can sit in one place for ten to fifteen minutes before his back begins to bother him. Plaintiff testified that he takes over-the-counter pain relievers for his physical condition. (Tr. 424-25.)

Plaintiff testified that he went to the hospital in November 2005 after a family argument, but did not attend the recommended rehabilitation program for alcohol abuse. Plaintiff testified that, currently, he rarely drinks alcohol since it has an adverse reaction with his medication. (Tr. 416.)

2.      *Testimony of Vocational Expert*

Ms. Gonzalez, a vocational expert (VE), testified at the hearing on July 25, 2011, in response to questions posed by the ALJ and counsel.

The VE classified plaintiff's past work as a warehouse worker as medium and unskilled; as a stocker as heavy and semi-skilled; as a forklift driver,  home

health aide, and golf course attendant as medium and semi-skilled; as a mover as very heavy and semi-skilled; and as a painter as medium and skilled. (Tr. 431.)

The ALJ asked the VE to assume that plaintiff was limited to medium, unskilled work and should not "work in a setting that includes constant regular contact with the general public and he should not perform work which includes more than infrequent handling of customer complaints." (Tr. 431.) The VE testified that plaintiff could perform his past relevant work as a warehouse worker, of which 9,740 such jobs exist in the State of Missouri and 433,370 nationally. (Tr. 431.)

The ALJ then asked the VE to assume that plaintiff was limited to light, unskilled work and should avoid contact with the public – that is, have infrequent contact with the public and no customer service work. The VE testified that such limitations would prevent plaintiff from performing any of his past relevant work, but that he could perform other work as a housekeeper/cleaner, of which 21,000 such jobs exist in the State of Missouri and 887,890 nationally; a machine pan greaser, of which 5,700 such jobs exist in the State of Missouri and 239,550 nationally; and a bench assembler, of which 5,700 such jobs exist in the State of Missouri and 239,550 nationally. (Tr. 432-33.)

Plaintiff's counsel asked the VE to assume an individual of plaintiff's age and work history, and that such person was limited to light, unskilled work with

only infrequent contact with the public and with coworkers.  Counsel asked the VE to further assume the person to have difficulties with concentration, persistence, and pace such that he would need to be redirected back to task twice a day. Counsel asked the VE to further assume that the person would have one to two repeated episodes of decompensation approximately every two weeks such that he would have to take a ten-minute unscheduled break once or twice every two weeks.  Finally, counsel asked the VE to assume that the person could not be given or carry out tasks that required detailed instructions; and, further, that the person could not climb, balance, reach his left arm above the shoulder, or be exposed to heights.  (Tr. 434-35.)  The VE testified that such a person could not perform the work to which she had testified or maintain any competitive employment due to the requirement of needing redirection to go back on task.  The VE testified that such problem would continue to exist even if the person needed to be redirected back to task only once a day.  (Tr. 435-36.)

### III.  Medical Evidence Before the ALJ

In March 1988, plaintiff was involved in a motorcycle accident from which he developed pain in the low back from L1 to L5.  Examination in April 1988 showed plaintiff to have full range of motion about the lumbar spine.  (Tr. 238A-39.)

In October 1992, plaintiff was involved in an automobile accident from

which he sustained moderate cervical sprain/strain, cervical/brachial syndrome, cervical/cranial syndrome, and multiple cervical subluxations. (Tr. 188.) An x-ray of the cervical spine showed no evidence of fracture or dislocation, but a congenital block vertebra at C2-3 and postural changes consistent with muscle spasms were noted. (Tr. 243.) From November 1992 to March 1993, plaintiff underwent chiropractic treatment for the condition, with improvement noted. (Tr. 247-54.)

In 1995, plaintiff was struck by a boat trailer from which he sustained a left shoulder injury, and specifically, a fracture to the left humeral neck. In August 1995, Dr. Mark K. Keohane noted that plaintiff would be unable to work for several months. In December 1995, Dr. Keohane opined that plaintiff would have some mild permanent symptoms associated with the injury, but that he was expected to be "okay generally" on a long term basis. (Tr. 176-80.)

In November 1999, plaintiff was admitted to Christian Hospital for symptoms associated with increased stress, including chest pain, blurred vision, and increased blood pressure. Diagnostic testing yielded normal results. Plaintiff reported being very nervous. Plaintiff reported drinking alcohol three or four times a week, having eight drinks on each occasion. Plaintiff was diagnosed with severe stress, alcohol abuse, and suspected hypertension. Plaintiff reported that he did not want help with regard to his drinking. Plaintiff was prescribed Xanax. It was

recommended that plaintiff contact BJC Behavioral Health to see a counselor. (Tr. 140-69.)

Plaintiff was admitted to the emergency room at Christian Hospital on August 16, 2004, for treatment of a laceration above the left eye. An x-ray taken of the chest showed old fractures of the tenth, eleventh, and twelfth ribs on the left with callus formations, but no acute fractures. Dystrophic ossification was also seen, inferior to the left glenohumeral (shoulder) joint. (Tr. 233.)

On February 22, 2005, plaintiff visited Dr. Andrew M. Kazdan with complaints of being stressed and depressed, because of the recent deaths of his mother, brother-in-law, and friend. Plaintiff reported feeling fatigued, chilled, and had changes in appetite. Plaintiff reported having no muscle pain, joint pain, weakness, atrophy, backache, or restricted motion. Plaintiff reported drinking a minimal to moderate amount of alcohol. Physical examination showed high blood pressure. Dr. Kazdan noted plaintiff to have depressive symptoms. Plaintiff denied any suicidal ideation. Plaintiff was prescribed Lexapro and was advised not to drink alcohol if he was going to start the antidepressant. Plaintiff was instructed to return in two months. (Tr. 184-86.)

Plaintiff was admitted to the emergency room at Christian Hospital on November 23, 2005, for alcohol intoxication. Plaintiff reported being under a lot of stress and that he had chest pain. Plaintiff had no other complaints. Physical

examination was unremarkable, except for plaintiff's intoxication. Plaintiff was noted to have normal range of motion about all four extremities. Plaintiff was given Thiamine. Plaintiff was discharged that same date in stable condition with diagnoses of acute alcohol intoxication/alcoholism and acute depression. Plaintiff requested that he undergo detoxification on an outpatient basis. (Tr. 203-19.)

On July 3, 2007, plaintiff underwent a consultative physical examination for disability determinations. Plaintiff reported to Dr. Elbert H. Cason that he had a bad back and a bad left shoulder as a result of the boat trailer accident in 1995. Plaintiff reported that he can walk two blocks, stand for half an hour, sit for one hour, and lift fifteen pounds. Plaintiff reported that he experiences pain with bending. It was noted that plaintiff currently was receiving no care for the conditions and was not taking any prescription medication. Plaintiff reported that he occasionally drank alcohol. Physical examination showed normal range of motion, no paravertebral lumbar area tenderness, and no muscle spasms. Straight leg raising was negative. Plaintiff was noted to have normal range of motion about the cervical spine, shoulders, knees, ankles, wrists, and elbows. Plaintiff had normal muscle strength in the upper and lower extremities and normal grip strength. Mental status examination was normal. (Tr. 190-95.)

On that same date, July 3, 2007, plaintiff underwent a consultative psychological evaluation for disability determinations. Plaintiff reported to Dr.

Sherman Sklar that he was depressed and suicidal. Plaintiff reported his depression to have begun in 1998 when his brother was diagnosed with cancer, and that his brother died in 2000. Plaintiff reported that his mother died of cancer in 2005 and that he continued to grieve every day over her loss, dwelling on her death. Plaintiff reported being unmotivated, staying in bed, and hanging around the house. Plaintiff reported not sleeping much, because of worry about himself and about the future. Plaintiff's friends live nearby, and he walks to their house to visit. Plaintiff reported that he also sees a cousin every couple of weeks. Plaintiff reported having had anxiety attacks in 2000 for which he took BuSpar, but that he has taken no psychiatric medication for six or seven years. Mental status examination showed plaintiff to be forthright, responsive, and alert. Plaintiff was coherent, relevant, and logical. His emotional tone was depressed and his affect was markedly depressed. No sign of a thought disorder was noted, but Dr. Sklar noted plaintiff to have significant suicidal ideation. Dr. Sklar also noted that despite plaintiff's report of weakened ability to focus, because of his lack of motivation, there was no noted problem in his ability to keep his mind on tasks during the interview and his thinking was noted to be appropriately organized. Upon conclusion of the evaluation, Dr. Sklar diagnosed plaintiff with alcohol dependence and adjustment disorder with depressed mood. Dr. Sklar assigned a Global Assessment of Functioning score of 47 and opined that plaintiff could show

improvement over the next twelve months if he was treated with antidepressant medications. (Tr. 197-201.)

On July 16, 2007, Aine Kresheck, a psychological consultant with disability determinations, completed a Psychiatric Review Technique Form in which she opined that plaintiff's alcohol dependence and adjustment disorder with depressed mood caused mild limitations in plaintiff's activities of daily living and in maintaining social functioning; moderate limitations in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration. (Tr. 83-94.) In a Mental Residual Functional Capacity (RFC) Assessment completed that same date, Ms. Kresheck opined that, in the domain of Understanding and Memory, plaintiff was moderately limited in his ability to understand and remember detailed instructions, but was otherwise not significantly limited. In the domain of Sustained Concentration and Persistence, Ms. Kresheck opined that plaintiff was moderately limited in his ability to carry out detailed instructions and to maintain attention and concentration for extended periods, but was otherwise not significantly limited. Ms. Kresheck further opined that plaintiff had no significant limitations in the domains of Social Interaction and Adaptation. (Tr. 95-97.)

Plaintiff visited Urgent Care at People's Health Center on March 4, 2011, for reasons not stated in the record. He was prescribed BuSpar and was instructed

to schedule an appointment with a provider.  (Tr. 345.)

Plaintiff visited Dr. Aaliya Najib at People's Health Center on March 9, 2011, and reported that BuSpar was helping a little with his depression.  Plaintiff reported having financial problems and that he was losing his house.  Plaintiff's mood was noted to be sad and his affect was flat.  He was not suicidal.  Plaintiff was noted to not have memory loss, and he had normal attention span and concentration.  Plaintiff's insight and judgment were normal.  Dr. Najib prescribed Zoloft and instructed plaintiff to see a psychiatrist.  (Tr. 347-49.)

## IV.  The ALJ's Decision

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2008.  The ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2005, the alleged onset date of disability.  The ALJ found plaintiff's residuals of left shoulder fracture, back strain, hypertension, and adjustment disorder with depressed mood to be severe impairments, but that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ found that plaintiff had the RFC to perform light work as defined in the Regulations, with additional limitations that he was moderately limited in concentration, persistence, and pace; could understand, remember, and carry out at least simple instructions and non-detailed

tasks; should not work in a setting that includes constant/regular contact with the general public; and should not perform work that includes more than infrequent handling of customer complaints. The ALJ determined plaintiff unable to perform any of his past relevant work. Considering plaintiff's age, education, work experience, and RFC, the ALJ determined vocational expert testimony to support a finding that plaintiff could perform other work as it exists in significant numbers in the national economy, and specifically, housekeeper/cleaner, machine pan greaser, bench assembler, and auto parts counter clerk. The ALJ therefore found that plaintiff was not under a disability from January 1, 2002 [sic], through the date of the decision. (Tr. 291-99.)

## V. Discussion

### A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007)

(internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.  The credibility findings made by the ALJ.

2.  The plaintiff's vocational factors.

3.  The medical evidence from treating and consulting physicians.

4.  The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.  Any corroboration by third parties of the plaintiff's impairments.

6.  The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the

record as a whole.  *Pearsall*, 274 F.3d at 1217 (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).  "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."  *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); *see also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**B.      Determination of Disability**

To be eligible for DIB and SSI under the Social Security Act, plaintiff must prove that he is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then he is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

## C.    Plaintiff's Claims

As an initial matter, the undersigned finds that, contrary to plaintiff's assessment, the ALJ did not so limit his testimony at the supplemental hearing such that the record was left undeveloped. Although a review of the hearing

transcript shows the ALJ to have curtly advised counsel to "[m]ove it along" (Tr. 424), "[w]rap it up" (Tr. 426), and ask further questions relating only to plaintiff's crying spells (Tr. 427), a review of the hearing transcript in its entirety shows the ALJ to have permitted counsel to ask additional, broader questions and also asked additional questions herself of plaintiff, concluding with a question to plaintiff if there was "[a]nything else." (*See* Tr. 428-29.) The ALJ also kept the record open for an additional thirty days to permit counsel to supplement the record with additional information. (*See* Tr. 437-38.)

Other than arguing generally that the ALJ's limiting of counsel's examination during the supplemental hearing led to an incomplete record regarding his impairments and the effects thereof, plaintiff fails to indicate what material facts were omitted from the record by the ALJ's conduct or what additional evidence was necessary to fully develop the record. *See Filipi v. Shalala*, No. 3-93-785, 1994 WL 706692, at *4 (D. Minn. Sept. 30, 1994) (citing *Highfill v. Bowen*, 832 F.2d 112, 115 (8th Cir. 1987)); s*ee also Bryant v. Colvin*, No. 4:13CV16 HEA, 2014 WL 636360, at *4 (E.D. Mo. Feb. 18, 2014) (ALJ engaging in similar conduct at administrative hearing nevertheless presumed to properly discharge his duties).

On the record before the Court, plaintiff's claim that the ALJ failed to fully develop the record by limiting counsel's examination fails. *Cf. Haley v.*

*Massanari*, 258 F.3d 742, 750 (8th Cir. 2001); *but see McGhee v. Harris*, 683 F.2d 256, 260 (8th Cir. 1982) (ALJ failed to fulfill affirmative duty to develop full and fair record by forestalling unrepresented claimant's attempts to clarify work-related capabilities; impossible to determine whether claimant felt intimidated by ALJ's admonitions).

Having found that the plaintiff was able to fully develop the record, it cannot be said that the ALJ's decision is supported by substantial evidence on the record as whole given that the hypothetical question posed to the vocational expert – the answer to which the ALJ relied upon to find plaintiff not disabled – was incomplete inasmuch as it did not contain all of plaintiff's limitations as found by the ALJ in her RFC determination. The matter must therefore be remanded for a proper hypothetical to be posed to an expert.

 "The Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers." *Guilliams v. Barnhart,* 393 F.3d 798, 804 (8th Cir. 2005). A vocational expert's testimony that is based on a hypothetical question that does not encompass all relevant effects of a claimant's impairments cannot constitute substantial evidence to support an ALJ's decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012). While the hypothetical question need not contain a description of the claimant's impairments

in diagnostic terms, it must "capture the concrete consequences" of the impairments. *Lacroix v. Barnhart,* 465 F.3d 881, 889 (8th Cir. 2006); *see also Renstrom*, 680 F.3d at 1067. An ALJ may not merely pose a generalized hypothetical question that assumes a claimant has the capacity to perform a given category of work. *Guilliams*, 393 F.3d at 804 (quoting *McGhee,* 683 F.2d at 259); *see also* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *4 (Soc. Sec. Admin. July 2, 1996) (RFC must contain a detailed and itemized assessment of the claimant's various functions; it may not merely describe a broad category of functioning). Instead, the ALJ must describe the claimant's limitations relating to specific work activities, which may include the claimant's mental abilities to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6.

Here, the ALJ's written decision contains an RFC determination that includes findings that plaintiff was moderately limited in concentration, persistence, and pace[1]; and could understand, remember, and carry out at least simple instructions and non-detailed tasks. (Tr. 293-94.) Plaintiff does not

---

[1] Notably, the ALJ used the conjunctive and found plaintiff to be limited in "concentration, persistence, *and* pace." (Tr. 293-94.) (Emphasis added.) Such use of the conjunctive indicates that the ALJ found plaintiff to be impaired in all three areas. *See Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997).

challenge these RFC findings. These limitations, however, were not included in the hypothetical question posed by the ALJ to the vocational expert. Instead, the hypothetical contained only a generalized assumption that plaintiff could perform unskilled work, with additional specific limitations relating only to plaintiff's contact with the general public and customers. No limitations relating to concentration, persistence, and/or pace were included despite the ALJ finding in her written RFC assessment that plaintiff was so limited. Since these limitations were not included in the hypothetical question posed by the ALJ, the expert could not have based her opinion on the full extent of plaintiff's limitations and her testimony could not have constituted substantial evidence to support the ALJ's decision. *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996).

Citing *Huddle v. Barnhart*, 143 Fed. Appx. 721 (8th Cir. 2005), the Commissioner argues that the general assumption in the hypothetical that plaintiff could perform "unskilled work" adequately accounts for the ALJ's written RFC finding that plaintiff experienced moderate limitations in concentration, persistence, and pace. For the following reasons, *Huddle* is inapplicable to the circumstances here.

At Step 3 of the sequential analysis in *Huddle* – at which the ALJ determined that the severity of Huddle's mental impairments did not equal a listed impairment – the ALJ found that Huddle had moderate difficulty in maintaining

concentration, persistence, and pace.  143 Fed. Appx. at 723.  At subsequent steps

in the analysis, the ALJ found that Huddle had the RFC to perform unskilled work,

and the Eighth Circuit determined that the ALJ properly considered the medical

evidence in making this finding.  *Id.*  Although the Commissioner contends that the

Eighth Circuit in *Huddle* "found that an RFC that limited a claimant to unskilled

work adequately accounted for the claimant's moderate difficulties in maintaining

concentration, persistence, and pace" (Deft.'s Brief, Doc. #25 at p. 12), the

undersigned declines to read *Huddle* so broadly.  First, "[e]ach step in the disability

determination entails a separate analysis and legal standard," *see Lacroix,* 465 F.3d

at 888 n.3, and indeed the analysis used to make a mental RFC assessment at Steps

4 and 5 is different from the analysis used at Steps 2 and 3 to rate the severity of a

mental impairment.  SSR 96-8p, 1996 WL 374184, at *4.  As such, contrary to the

Commissioner's position, *Huddle* cannot be read to hold that a finding of moderate

difficulties in concentration, persistence, and pace equates *ipso facto* with a finding

that a claimant can perform unskilled work, inasmuch as these separate findings in

*Huddle* were made at different steps of the sequential analysis.  In addition, the

circumstances here are distinguishable from *Huddle* in that, unlike the ALJ in the

instant case, there is no indication in *Huddle* that the ALJ included in the *RFC*

assessment any limitations relating to concentration, persistence, and pace and

proceeded to fail to include such limitations in a hypothetical question posed to a

vocational expert. The undersigned therefore finds *Huddle* to be inapplicable to

the circumstances of this case and declines to adopt the Commissioner's reading of

*Huddle* that a finding that a claimant experiences moderate limitations in

concentration, persistence, and pace *ipso facto* equates with a finding that the

claimant can perform unskilled work.

Contrary to the Commissioner's argument, the general assumption in the

ALJ's hypothetical here that plaintiff could perform "unskilled work" does not

cure the ALJ's deficiency in failing to include plaintiff's specific RFC limitations

as to concentration, persistence, and pace.

> Because response to the demands of work is highly individualized, the
> skill level of a position is not necessarily related to the difficulty an
> individual will have in meeting the demands of a job. A claimant's
> [mental] condition may make performance of an unskilled job as
> difficult as an objectively more demanding job.

SSR 85-15, 1985 WL 56857, at *6 (Soc. Sec. Admin. 1985). This is especially

significant here, where the vocational expert stated on cross-examination that a

person limited to unskilled work who also had difficulties maintaining

concentration, persistence, and pace such that he would have to be redirected back

on task could not perform the work to which she testified nor be competitively

employed. (Tr. 434-37.) *See Newton*, 92 F.3d at 695. As such, if the ALJ's

hypothetical to the vocational expert contained all of plaintiff's limitations,

including limitations as to concentration, persistence, and pace, the expert's

response thereto may have been different.  *Id.*  Any hypothetical question on remand should include specific findings as to plaintiff's limitations in concentration, persistence, and pace such that the vocational expert might accurately determine plaintiff's ability to work.  *Id.*[2]

"[W]hen an ALJ states that a claimant has impairments of concentration, persistence, or pace, the hypothetical must include those impairments."  *Brachtel v. Apfel,* 132 F.3d 417, 421 (8th Cir. 1997) (citing *Newton*, 92 F.3d at 698).  Upon remand, the ALJ may continue to limit plaintiff to unskilled work, but the hypothetical to the vocational expert must also include specific limitations in concentration, persistence, and pace as well as all other RFC findings that are supported by the record.  *Id.* (while ALJ's hypothetical limited claimant to simple work, it also set out specific limitations as to concentration and pace).

Although the undersigned is aware that upon remand, the ALJ's decision as to non-disability may not change after posing a properly formulated hypothetical question to the vocational expert, *see Pfitzer v. Apfel*, 169 F.3d 566, 569 (8th Cir.

_____

[2] The Court rejects plaintiff's argument that the vocational expert should also consider the dizziness and drowsiness caused by his medication.  Unlike the limitations in concentration, persistence, and pace, the ALJ did not include in her RFC determination that plaintiff was affected by his claimed dizziness and drowsiness.  Further, although not challenged by plaintiff on this appeal, the ALJ properly determined plaintiff's subjective complaints – including his complaints of dizziness and drowsiness – not to be entirely credible.  *See Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990) (ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole).  A hypothetical question posed to a vocational expert need only include those impairments and limitations found credible by the ALJ.  *Gragg v. Astrue*, 615 F.3d 932, 940 (8th Cir. 2010).

1999), the determination is nevertheless one that the Commissioner must make in the first instance.

Therefore,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion. Because the current record does not conclusively demonstrate that plaintiff is entitled to benefits, it would be inappropriate for the Court to award plaintiff such benefits at this time.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of September, 2014.